Ronai & Ronai, LLP
Attorneys at Law

The Ronai Building
34 Adee Street, Port Chester, New York 10573
Telephone (914) 824-4777

Manhattan Office:
45 Rockefeller Plaza, Suite 2000
New York, NY 10111
Telephone (212) 268-4777

October 27, 2022

**VIA ECF**
Honorable Paul G. Gardephe
United States District Court
Southern District of New York
40 Foley Square, Room 2204
New York, New York, 10007

Re: Levente Nagy v. MHP Land Associates, LLC, et al.
Case No.: 19-cv-06395-PGG-RWL

Your Honor:

We represent plaintiff, Levente Nagy, in this matter and submit this letter[1], as directed by the Court, briefing the interplay between Federal immigration law, namely the Immigration Reform and Control Act of 1986 ("IRCA"), and the New York State Labor Law permitting undocumented workers to recover future lost wages – and how same applies to defendant's anticipated defense against Mr. Nagy's claim for future lost wages.

As will be more fully set forth below, pursuant to the relevant caselaw, Mr. Nagy's undocumented status does not foreclose an award of lost wages. Additionally, defendants have produced no evidence whatsoever showing that Mr. Nagy obtained his job fraudulently. Further, Mr. Nagy has recently been issued a Social Security Card which authorizes him to work in the United States - although he is physically unable to do so as a result of the injuries sustained in his 10-12 foot fall from the sidewalk bridge/scaffolding to the ground. As such, defendants will be unable to offer a valid defense against Mr. Nagy's claim for lost earnings. Accordingly, any mention of Mr. Nagy's status to the jury will be far more prejudicial than probative, and according to all authority on the matter, should not be permitted.

The interplay between the IRCA and New York Labor Law was analyzed, in great depth, by the Second Circuit in the case of *Madeira v. Affordable Housing*, 469 F.3d 219 (2d Cir. 2006).

---

[1] Your Honor stated that we could submit our brief in letter form.

In *Madeira*, the plaintiff was a citizen of Brazil who entered the United States illegally. Once in the United States, his brother, Miranda, who was a Supervisor at C & L Construction, was able to get the plaintiff a job with that company. While working as a roofer for C & L construction, the plaintiff fell from the top of a building sustaining serious injuries that required four surgeries and more than three months of hospitalization. The plaintiff alleged that his injuries were caused by a violation of New York Labor Law §240(1).

At the trial level, the district court instructed the jury that it was not to consider Madeira's immigration status in assessing the defendants' liability under Labor Law § 240(1). But the jury was allowed to consider plaintiff's undocumented status in awarding any compensatory damages for lost earnings. Specifically, the jury was instructed they could consider:

> "whether the plaintiff would have been able to obtain other employment since as a matter of law, it is illegal for an employer in the United States to employ an undocumented alien, although of course it does happen that certain employers violate that law."

and,

> "You might also want to consider his status in determining the length of time he would continue to earn wages in the United States and in considering the type of employment opportunities that would be available to him. The fact that an alien is deportable does not mean that deportation will actually occur, but you are allowed to take the prospect of deportation into account in your deliberations."
>
> "Finally, even if you conclude that the plaintiff would be deported at some point, you could conclude that he would lose income from employment overseas if you have a basis for making that calculation. In short, it's up to you, the jury, to decide what weight, if any, to give plaintiff's alien status just as you would any other evidence. Alien status is not relevant to items of damage other than lost earnings."

[*Madeira*, at 225]

The jury found the defendants liable under Labor Law § 240(1), and awarded the plaintiff future lost earnings. The defendants appealed the verdict, arguing that the plaintiff was precluded from recovering lost earnings because at the time of his accident, he was not legally eligible to work in the United States.

On appeal, the Second Circuit first noted that "**Nothing in the trial record indicates that Madeira himself used any false identification to obtain work in the United States**; such action was apparently unnecessary given his brother's willingness to hire him despite knowing Madeira's undocumented status." [*Madeira* at 223-224] [*Emphasis added*]

The Second Circuit also noted that the New York Court of Appeals, in the case of *Balbuena v. IDR Realty LLC*, 6 N.Y.3d 338 (2006) held that the state legislature intended the Scaffold law to protect "all workers in qualifying employment situations — regardless of immigration status", and that in the *Balbuena* case, "the undocumented aliens had not themselves violated federal immigration law in procuring employment." [*Madeira*, at 228] The court also stated:

> "Further, the Court of Appeals noted that New York law for compensating personal injury specifically sought to avoid any conflict with federal immigration law by instructing juries to consider the fact of a plaintiff's removability in determining what, if any, lost United States earnings should be compensated."

[*Id.*]

The Second Circuit then examined the IRCA which:

> "makes it unlawful for employers knowingly to hire unauthorized aliens. *See* 8 U.S.C. § 1324a(a). To ensure against such hiring, IRCA mandates employer verification of the legal status of persons hired. *See id.* § 1324a(b). Employers who fail to check their workers' immigration status or who fail to keep eligibility records face civil fines. *See id.* § 1324a(e)(4)(A). Employers who engage in a pattern or practice of knowingly employing undocumented aliens are subject to criminal penalties. *Id.* § 1324a(f)."

[*Madeira*, at 231]

The Court further noted:

> "Not until IRCA was itself amended in 1990 did Congress provide for penalties and sanctions to be imposed directly on undocumented workers who sought employment in the United States. *See* Immigration Act of 1990 § 544(a), Pub.L. No. 101-649, 104 Stat. 4978, 5059-60 (codified at 8 U.S.C. § 1324c). Even then, however, Congress made IRCA's new sanctions applicable only to aliens who knowingly or recklessly used false documents to obtain employment. *See* 8 U.S.C. § 1324c (a), (f). It did not otherwise prohibit undocumented aliens from seeking or maintaining employment."

[*Id.*]

The Second Circuit recognized that since under the IRCA, "as between an employer and the federal government, the act of hiring an undocumented worker knowingly or without verifying his or her employment eligibility is unlawful,"[2] and stated: "To refuse to allow recovery against a person responsible for an illegal alien's employment who knew or should have known of the illegal

---

[2] *Madiera*, at 242.

alien's status would provide an incentive for such persons to target illegal aliens for employment in the most dangerous jobs or to provide illegal aliens with substandard working conditions."[3]

At its core, IRCA requires employers to verify the employment eligibility of its workers by checking to see if the worker's provided documents are valid and legitimate. Obviously, an employer cannot circumvent the statute by knowingly hiring an undocumented worker, and/or failing to verify the worker's eligibility. In other words, employers cannot turn a blind eye and simply accept on face value that the documents supplied to them which purportedly establish a worker's eligibility, are valid – and then expect to escape liability if that worker becomes injured. Rather, to comply with the IRCA, <u>the employer must verify the documents</u> potential workers provide.

Accordingly, following its in-depth analysis of both laws, the Second Circuit concluded:

> "that where, as in this case, (1) the wrong being compensated is personal injury...; (2) it was the employer and not the worker who violated IRCA by arranging for employment; and (3) the jury was instructed to consider the worker's removability in assessing damages, New York law does not conflict with federal immigration law or policy in allowing an injured worker to be compensated for some measure of lost earnings at United States pay rates."

[*Madeira*, at 223]

The court further stated:

> "In sum, although federal immigration law prohibited Madeira's employment in this country, where, as in this case, both his initial hiring in violation of IRCA and his personal injury resulted from the wrongdoing of others, we identify no clear conflict between federal immigration law and New York law allowing a jury...to award some measure of compensatory damages based on lost United States earnings for a violation of Labor Law § 240(1)."

[*Madeira*, at 249]

**Thus, in *Madeira*, the Second Circuit found no conflict between the laws and permitted the award of future lost wages to stand for the undocumented plaintiff, where there was no evidence that the plaintiff provided false or fraudulent information when he obtained his employment. The court also found that it was proper for the jury to consider whether the plaintiff's undocumented status would prevent him from obtaining other employment, and that the plaintiff might be deported at some point.**

---

[3] *Madiera*, at 248.

Following *Madeira*, in the case of *Hocza v. City of New York*, No. 06 Civ. 3340 (S.D.N.Y. Jan. 19, 2009), the defendant City of New York attempted to argue that because the plaintiff was an undocumented alien - if removal proceedings were later commenced, he would be subject to deportation, and therefore, not earning future wages in the U.S.

In rejecting the City's argument, Judge Robert Sweet noted that:

> "The law clearly states that while the plaintiff's status is not a bar to recovery it may act as a factual item to be presented to the trier of fact." *Cano v. Mallory Mgmt.*, 760 N.Y.S.2d 816, 818 (N.Y. Sup. 2003). However, **"a plaintiff's status as an illegal alien, in and of itself, cannot be used to rebut a claim for future lost earnings."** *Klapa v. O Y Liberty Plaza Co.*, 645 N.Y.S.2d 281, 282 (N.Y. Sup Ct. 1996). **Without proof of imminent removal proceedings, "Any probative value that Hocza's immigration status might have, is outweighed by the obvious prejudice that would flow from its use to speculate as to Hocza's removal from the country."**

Judge Sweet did, however, hold that "Hocza's immigration status may be relevant to the question of the job opportunities he would have had in this country", and concluded:

> **"the City will be precluded from presenting evidence related to Hocza's immigration status, except for the limited purpose of addressing its effect on job opportunities in the United States."**

Thus, according to *Madeira* and *Hocza*, Mr. Nagy's status is only relevant if defendants can 1) show that he obtained the job by submitting false or fraudulent documents, and that Spring Scaffolding LLC verified the documents as required by the IRCA; or 2) to show that he will be prevented from obtaining other employment; or 3) that removal proceedings are imminent. Otherwise, according to *Madeira* and *Hocza* any offer of proof regarding Mr. Nagy's status is far mor prejudicial than probative and should not be allowed.

First, defendants have shown no evidence that Mr. Nagy submitted false or fraudulent documents to obtain his job with Spring Scaffolding. Nor have they shown that Spring Scaffolding verified Mr. Nagy's documentation as required by Federal law.

Defendants have recently presented a copy of an unsigned Social Security Card purportedly belonging to Mr. Nagy. In his response to defendants' Request for Admissions, Mr. Nagy denied having possession of this card. This purported Social Security card is the only document produced by defendants in this regard. At no time during discovery, have defendants exchanged any other documents pertaining to Mr. Nagy being hired by Spring Scaffolding LLC such as a job application.

Moreover, according to the Joint Pretrial Order [Docket No. 87] the only witness defendants are calling from Spring Scaffolding is Nicolae Ionascu, who testified at his deposition that he is simply a foreman at Spring Scaffolding - he is not an owner of the company, nor was he involved in the hiring process. Therefore, it is submitted that this witness possesses no knowledge as to

what documents, if any, were provided when Mr. Nagy applied for the job, and no knowledge as to whether such documents were properly verified by Spring Scaffolding LLC. Further, according to the Joint Pretrial Order, Mr. Ionascu is only "expected to testify regarding the presence of ladders on the jobsite and the instructions Spring Scaffolding employees received regarding how to properly descend the sidewalk shed." [Docket No. 87] As such, Mr. Ionaescu's testimony does not cover what took place when Mr. Nagy applied for, and was hired to work at, Spring Scaffold, including the employer verification of any documents he allegedly may have provided.

Second, as mentioned above, Mr. Nagy has recently been issued a Social Security Card which authorizes him to work in the United States. He obtained this card when he applied for a green card. He has not yet received a green card. Therefore, defendants will be unable to demonstrate that had Mr. Nagy not been injured in this incident, he would have been curtailed from obtaining certain employment as a result of his immigration status.

Third, defendants have never argued, nor offered any evidence at all, that Mr. Nagy is subject to imminent removal proceedings. Given his application for a green card, and recently being issued a Social Security card which is a precursor to a green card, defendants will not be able to establish that Mr. Nagy is in imminent danger of being removed from this country.

Accordingly, it is submitted that, as defendants have no evidence showing that any of the three circumstances where a plaintiff's undocumented status is relevant, any mention, or attempt to mention to the jury of Mr. Nagy's status would be far more prejudicial than probative, and therefore, must not be allowed.

Thank you for your consideration.

Respectfully,

Holly Ostrov Ronai (HO3923)

Cc: All parties via ECF